UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action Docket No. 1:12-CV-10567-GAO

| | |
|---|---|
| CEX MASSACHUSETTS, INC. | ) |
|     Plaintiff | ) |
| v. | ) |
| EDWARD M. DAVIS, Individually and in his official capacity as Commissioner of the Boston Police Department, | ) |
| DANIEL KEELER, Individually and in his official capacity as a member of the Boston Police Department, | ) |
| MARK HARRINGTON, Individually and in his official capacity as a member of the Boston Police Department, | ) |
| CAPTAIN BERNARD O'ROURKE, Individually and in his official capacity as a member of the Boston Police Department, | ) |
| THE CITY OF BOSTON, | ) |
|     Defendants | ) |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

STATEMENT[1]

Plaintiff operates a store that buys, sells and exchanges a range of technology and entertainment products; including cell phones, video games, DVDs, Blu-Ray movies, computers, digital electronics, televisions, monitors, and music CDs.  It holds a duly authorized Second-Hand Articles License issued by the Boston Police Department.  Plaintiff has held this license since 2008.  This license was current on January 31, 2012.

On January 31, 2012, pursuant to a search warrant seeking evidence of stolen goods, the defendants removed the license from the premises, effectively shutting the business without due process[2].

Thus, plaintiff filed a lawsuit alleging in part that due process required, at a minimum, notice and a hearing. This filing caused the City and Department (through the offices of counsel) to immediately return the license, tacitly admitting that the original seizure was unconstitutional.

Two days later, on February 2, 2012, the individual Defendant Captain O'Rourke publicly proclaimed that the department intended to put plaintiff out of business. This was heard by a news reporter who duly memorialized it. See Exhibit H attached to Complaint.

Plaintiff was then served with an unclear and vague notice, scheduling a license revocation hearing for February 22, 2012, at the department's headquarters. See Exhibit F attached to Complaint.  The department then subjected CeX to a "kangaroo court" where a ruling to revoke the license was pre-ordained.  Without knowledge of Captain O'Rourke's statement, plaintiff attended the hearing in good faith and called four (4) percipient witnesses.  The department put on no substantial evidence whatsoever.  A transcript of the hearing and plaintiff's

---

[1] A more substantial recitation of the underlying facts is included in the verified Complaint.
[2] The affidavit filed in support of this search warrant has been impounded and plaintiff has thus far been denied access to the affidavit.  At a subsequent hearing the named defendant, Harrington, could not identify a single stolen phone that had been seized.

Proposed Findings of Fact and Rulings of Law are attached to the Complaint as Exhibits I and J respectively.

On March 27, 2012, plaintiff received notice that the license was revoked. Although required by M.G.L. ch. 30A §11(8), no Findings of Fact or Rulings of Law were made. A copy of this notice is included as Exhibit K to the Complaint.

For the reasons set forth below, it is submitted that such revocation is illegal, unconstitutional and not based upon substantial evidence.

## ARGUMENT

## STANDARD OF REVIEW

In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors:

> (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, *i.e.,* "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld," *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991); and (4) the effect on the public interest of a grant or denial of the injunction. *See, e.g., id.*
> Gately v. Com. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993).

"The first factor—likelihood of success—normally will weigh the heaviest in this four-part decisional calculus." Waldron v. George Weston Bakeries Inc., 570 F.3d 5, 9 (1st Cir. 2009). Therefore, "[i]f a great showing of likely success on the merits is made by a plaintiff, a reduced showing of irreparable harm may be appropriate." Turner v. City of Boston, 760 F. Supp. 2d 216, 218 (D. Mass. 2011).

"The burden of proof is on the plaintiff." Turner v. City of Boston, 760 F. Supp. 2d 216, 218 (D. Mass. 2011).

I.      **PLAINTIFF IS LIKELY TO SUCCEED**

The matter before the court commenced when the defendants seized plaintiff's license without due process. In a totally arbitrary and capricious manner, they utilized the search warrant process to violate CeX's rights to continue buying and selling merchandise.

There is a two prong test to determine whether there has been a violation of due process in these types of circumstances. The plaintiffs must show: (1) that there was a constitutionally protected interest; and (2) that the plaintiffs were deprived of this interest without due process of law.  *See* Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

The constitutionally protected interest prong is easily established. An already-licensed plaintiff has a "vested property interest in the license, which forecloses denial without due process." Wayfield v. Town of Tisbury, 925 F. Supp. 880, 885 (D. Mass. 1996).  See also Lowe v. Scott, 959 F.2d 323 (1st Cir.1992) (medical license); Roy v. City of Augusta, 712 F.2d 1517 (1st Cir.1983) (license to operate pool hall); Medina v. Rudman, 545 F.2d at 250 ("Doubtless once a license, or the equivalent, is granted, a right or status recognized under state law would come into being, and the revocation of the license would require notice and hearing ..." *id.):* Wall v. King, 206 F.2d 878 (1st Cir.1953), *cert. denied* 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411 (driver's license).

Plaintiff obtained its license in 2008. In reliance thereupon, plaintiff entered into a ten (10) year lease for real estate. The plaintiff clearly had and has a vested, constitutional property interest in the Second-Hand License.

Thus, the issue will turn on whether the manner and means by which the license was taken violates due process.

Procedural due process requires notice and an opportunity for hearing. Wilner v. Committee on Character and Fitness, 373 U.S. 96, 103 (1963) and Goldsmith v. United States

Board of Tax Appeals, 270 U.S. 117, 123 (1926).  At a bare minimum, due process requires that in any proceeding to be accorded finality, notice must be given that is reasonably calculated to apprise an interested party of the proceeding and to afford him an opportunity to present his case. LaPointe v. City of Worcester, 389 Mass. 454, 458 (1983), *citing* Konstantopoulos v. Whately, 384 Mass. 123 (1981).  CeX was not given sufficient notice in this regard as the notice failed to detail the reasons for the contemplated license revocation and denied CeX an opportunity to prepare for the hearing in a meaningful way.  *See* Goldberg v. Kelly, 397 U.S. 254, 267-268 (1970).  For any hearing to comply with due process, it may not be an exercise in perfunctory puppetry because the decision has been predetermined.  "A fundamental requirement of due process is 'the opportunity to be heard.'  It is an opportunity which must be granted at a *meaningful time and in a meaningful manner*. Armstrong v. Manzo, 380 U.S. 545, 552 (1965) (emphasis supplied) (internal citation omitted).  Where the outcome of a hearing is predetermined, it amounts to a bureaucratic façade and "[s]uch vexatious snaring of property and liberty rights cannot withstand the mandates of the Fourteenth Amendment." David Gonzalez v. Calero, 440 F.Supp. 989, 999 (D. Puerto Rico 1977)

    LaPointe, supra, is the lead Massachusetts case construing the rights of a licensee pursuant to M.G.L. c. 140 § 54.  It holds that the licensing authority has great discretion, but may not exercise it in an arbitrary and capricious manner.  LaPointe v. City of Worcestor, 389 Mass. 454, 462 (1983); Caswell v. Licensing Commn. for Brockton, 387 Mass. 864, 877 (1983);  Cf. Arnett v. Kennedy, 416 U.S. 134, 158-164 (1974).

    LaPointe owned a single second hand store in Worcester.  His wife purchased several gold rings knowing them to have been stolen.  Following notice and a hearing, LaPointe's license was revoked.  Thus the case stands for the obvious proposition that due process requires both notice and a hearing.

Here there was neither. Initially the license was seized and removed on January 31, 2012 at the time of the execution of the search warrant. This seizure was not authorized by the warrant[3]. After plaintiff initiated a lawsuit for return of the license, the license was returned and the plaintiff received a vague notice of a hearing to be held in late February 2012. This notice did not provide the plaintiff with a clear understanding as to the allegations of misconduct. Plaintiff duly objected to the lack of adequate notice; but did appear and participate in the "hearing." This so-called "hearing" failed to comply with basic due process requirements. The Boston Police Department had no intention of affording the plaintiff due process and the hearing did not occur in a meaningful manner. This is plainly shown by their actions in seizing the license during the search, publically defaming plaintiff and vowing "to put them out of business[4]" before the hearing was held, and then revoking the license without any substantial evidence to support this action.

An agency's decision is arbitrary and capricious when it is without evidentiary support. <u>Massachusetts General Hospital v. Commissioner of Public Welfare</u>, 350 Mass. 712, 216 N.E.2d 434 (1966). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>M.G.L. c. 30A § 1(6)</u>. Here, there was substantial evidence that (1) plaintiff took proactive steps to implement all of the policies and procedures promulgated by the City of Boston, (2) plaintiff took proactive steps to meet with other licensed second hand shops and the Boston Police Department to attempt to implement a more effective security measure for detecting and apprehending thieves, (3) plaintiff assisted police in apprehending a known thief; and (4) Plaintiff's employees did not knowingly accept stolen property during the BPD sting . The defendant is likely to argue that the issuance of the warrant demonstrates probable cause that a crime has been committed and that this alleged evidence of criminal

---

[3] A copy of the search warrant is attached to the Complaint at Exhibit C.
[4] See Complaint Exhibit H

6

activity is in and of itself a reason to pull the license, given the Commissioner's broad powers to revoke licenses at his "pleasure." The short answer is that the defendants had an opportunity to present just such evidence at the hearing and none was provided. Instead, the testimony from the Boston Police Department's *only* witness was that he was relying on hearsay and could not identify a single phone from those seized in the search that was stolen.

LaPointe held further that M.G.L. c. 140 § 54 was not unconstitutionally vague as applied to LaPointe. This is because the LaPointes failed to keep appropriate records. "Permitting a junk dealer who freely purchases property which a reasonable person would suspect to be stolen, without making proper records, would hardly encourage the restoration of stolen items of property to their true owners or the detection of thieves." LaPointe, supra at 463.

Here, however, plaintiff has alleged and verified that it keeps records in precise accord with the regulations issued by the licensing authority. Plaintiff fully supports the statutory goal of preventing trafficking in stolen goods. Indeed, during the interim between the hearing and the letter ruling, plaintiffs succeeded in assisting the department catch a thief and return a stolen phone to its rightful owner.

"[V]ague laws that do not limit the exercise of discretion by officials engender the possibility of arbitrary and discriminating enforcement," thus violating due process. Caswell, supra, 387 Mass. 864 *citing* Grayned v. Rockford, 408 U.S. 104, 108-09 & n. 4 (1972). Without a doubt M.G.L. c. 140, § 54 is unconstitutionally vague unless interpreted and provided a judicial sheen. No one really believes the Commissioner has power to willy nilly decide the important issue of licensure at his "pleasure." Plaintiff argues that the statute simply fails to pass Constitutional muster; and this argument t will be fleshed out as the litigation proceeds.

The power under M.G.L. c. 140, § 54 to revoke licenses at the "pleasure" of appropriate authorities may not be exercised arbitrarily. LaPointe, supra. *See generally*, Papachristou v.

Jacksonville, 405 U.S. 156, 162 (1972); Caswell, supra, 387 Mass. at 875.  Similar language in other licensing statutes has been construed "to mean 'in the exercise of a wise discretion.'" Marrone v. City Manager of Worcester, 329 Mass. 378, 379 (1952), *quoting* Commonwealth v. McGann, 213 Mass. 213, 215 (1913).

LaPointe held that the objectives of § 54 "are to determine what persons shall be engaged in the business and to make it possible that junk, old metals and second hand articles stolen may be traced and restored to their owners, and that the thief may be detected and convicted."  389 Mass. at 462.  The actions of a licensing authority must be calculated to achieve these objectives. Id. at 462-463.

Thus, even if a single employee made an error in judgment (which allegation is denied), grounds for instant revocation of the license are not met.  Plaintiff has a proven record of compliance with the purpose of the statute, both in Boston and elsewhere.

Thus, plaintiff is certain to prevail on the merits.

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE LICENSE IS NOT RETURNED

Deprivation of constitutional rights may constitute per se irreparable harm.  Lainer v. City of Boston, 95 F.Supp.2d 17, 21 (D.Mass.2000) *citing* Elrod v. Burns, 427 U.S. 347, 373 (1976).  Here the city is attempting to strip plaintiff's right to operate a respectable business and to be free from unreasonable seizures.

In addition to the Constitutional claims, plaintiff suffers tangible irreparable harm. Irreparable harm occurs with each passing hour that CeX is without its license.  Its business model is dependent upon dealing in second-hand goods.  It cannot operate as a "one way street." Without the ability to purchase, plaintiff has no ability to procure merchandise for sale in accord with the company's business model.  Defendants' precipitous action has the effect of forcing a liquidation of the store. If the plaintiff's license is revoked during the pendency of this litigation

it will effectively close the business permanently at that location.  This inability to sustain its business will result in the complete destruction of its operations at the Winter St. branch.  The resultant harm cannot fully be addressed by later compensatory and corrective relief.  In addition to great financial harm, Plaintiff will lose a prime retail location at competitive lease rates in Boston's Downtown Crossing which it will be unable to replace.  This loss harms CeX's good will with customers and its ability to market its services in a highly trafficked area on one of Boston's busiest pedestrian streets.  The opportunity costs alone are staggering and impossible to measure.  Additionally, the unnecessary shuttering of its doors will cause CeX great embarrassment and will forever impact upon on its good reputation in the Boston community in a manner which could never be adequately addressed by subsequent compensatory and corrective relief.

### III.  PLAINTIFF SHOULDERS THE ENTIRE HARDSHIP IF THE LICENSE IS NOT RETURNED

It is clear that the plaintiff will suffer greater harm if the injunction is denied than the defendant will suffer if it is granted.  Enjoining the enforcement of the decision to revoke simply restores the *status quo ante*.  There is no evidence that such a return will result in any cognizable harm to the defendants or to the public as a whole.  See e.g. Faraone v. City of East Providence, 935 F.Supp. 82 (D.R.I. 1996).

The court should carefully question any allegation that the closure is necessitated by public safety. No doubt, the police will blow that trumpet.  Careful look at the evidence reveals absolutely nothing to support such a claim, and indeed, as pleaded, the claim is defamatory.

### IV.  PLAINTIFF SERVES A VALUABLE PUBLIC INTEREST AND THE PUBLIC INTEREST IS SERVED BY GRANTING A PRELIMINARY INJUNCTION

Plaintiff has been a good corporate citizen in Boston, other parts of the United States and the World.  Plaintiff provides a valuable service to the citizens of this City.  Technology is an emerging and ever changing market.  The regular advances of products creates a need for places such as plaintiff that helps to recycle and reuse electronics and other technological materials.  Most importantly however, is that the BPD should not be allowed to utilize the warrant process to instantly shut down a retail outlet that has well served the public, that employs over twenty fellow citizens, and that fills a retail need in a vibrant section of the City without meaningful due process.

Additionally, plaintiff contends that defendants are improperly enforcing the regulations, rules and policies of the Commonwealth.  It has been recognized that proper enforcement of the laws of Massachusetts is in the interest of the public.  See <u>Lainer</u>, 95 F.Supp.2d at 21-22.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully asserts that the motion for a preliminary order should be ALLOWED.

Respectfully submitted:

  <u>/s/ Robert S. Sinsheimer</u>
Robert S. Sinsheimer, Esq., BBO # 464940
Lauren M. Thomas, Esq., BBO # 667973
Michael Harriman, Esq., BBO # 680061
Sinsheimer & Associates
92 State Street, 9th Floor
Boston, MA. 02109
(617)-722-9954

Dated:  March 30, 2012


**Certificate of Service**

I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 18, 2011.

*/s/ Robert S. Sinsheimer*